AGNES M. KEARNEY and others, appellants, and EDWARD KEARNEY, executor of Philip Kearney, deceased, respondent.

1. In the case of a legacy to a daughter of ten thousand dollars, "to be paid to her on her reaching the age of sixteen years; if, however, she die before that age, this legacy to become part of my residuary estate," *held* that the interest on the legacy should be paid to the child for her maintenance.

2. A legacy in the codicil of the same will to another daughter, of "five hundred dollars per annum, during her natural life, to be paid to her quarterly in advance by my executor, commencing with her attaining her fifteenth year," does not authorize the payment of interest to the child.

3. A devise to the widow, of an estate called Bellegrove, and the furniture, household goods, silver, books, paintings, statuary, and other works in the fine arts, there or elsewhere, during her natural life and widowhood,

*held* to entitle her to use the goods, &c., in her own or other person's house, or to let them out to hire, and that the estate in the land did not cease upon her failing to reside at Bellegrove.

4. *Held* also, that the tenant for life, in such case, was only bound to make such repairs as should be necessary to prevent waste ; and that if an insurance was considered desirable, the tenant for life and remainderman must insure their respective interest, as may be deemed most advisable.

5. The court declined to make any order respecting the payment of the taxes assessed, or to be assessed, on the property.

---

This was an appeal from a decision of the Chancellor, reported *ante, p.* 59.

*Mr. A. O. Zabriskie, Mr. Bradley,* and *Mr. Frelinghuysen,* Attorney General, for appellants.

*Mr. C. Parker,* for respondent.

The opinion of the court was delivered by

ELMER, J. The bill in this case was filed by the executor of General Philip Kearney, to obtain the decision of the court upon several disputed questions, arising under the will and codicil of the deceased. Three of the defendants, who are the widow and children of General Kearney, have severally appealed from the decree of the Chancellor, in various particulars affecting their respective interests, and the questions thus raised have been fully argued before this court. It will be most convenient to consider them in the order adopted by the Chancellor, which is substantially the same as that suggested by the complainant's bill.

First, as to the legacies to the two daughters, Susan and Virginia. That to Susan is contained in the original will, and is as follows : " I give and bequeath to Susan Kearney, my daughter by the aforesaid Agnes Maxwell, the sum of ten thousand dollars, to be paid to her on her reaching the age of sixteen years. If, however, she die before that age, this legacy to become part of my residuary estate." It is a vested legacy, subject to be defeated, if the legatee dies before she

reaches the age of sixteen, and is not payable until that time. For a long period, both in England and America, courts called upon to administer the law of wills, have felt constrained to go great lengths, and have "made a great stretch" so to interpret them, as to allow a maintenance for the infant children of a testator, not otherwise provided for. This has been done, by holding that the parent did not mean to deprive them of the interest on a legacy, from the time of his death, to the time fixed for the payment of the principal, although no intention to allow interest is expressed, and sometimes, even when the terms of the gift, if construed strictly, show a contrary intent. That the legacy is defeasible upon a future contingency, as in the case before us, has not been considered a sufficient reason for departing from this rule; as fully appears by the cases referred to by the Chancellor, and others, which it is not necessary to specify. Whatever might be our opinions, if this was a new question, it would be attended with dangerous consequences, to set a new precedent, called for by no controlling necessity, and thus affect the construction of many wills which have been administered, in conformity with the law established by an uninterrupted course of judicial decisions. Had no other question than this arisen upon the will and codicil before us, the court in all probability would not have been appealed to for any direction respecting it.

The decree, by its terms, declares it to be the duty of the executor, to pay the guardian of Susan, the sum of six hundred dollars per annum, being the interest of the legacy bequeathed to her. It does not distinctly appear whether the fund is, in fact, so invested, or can be safely so invested, as to produce interest at the rate assumed, clear of taxes and other necessary charges. If it shall be hereafter shown, that so much interest cannot be obtained, it will be in the discretion of the Chancellor to modify the decree in this particular, so as to allow only the actual interest received, clear of necessary deductions.

The legacy to Virginia, contained in the codicil, is very

Kearney *v*. Executor of Kearney.

different from that to Susan. It is as follows: "I do hereby devise to my daughter, Virginia, lately born to me, five hundred dollars per annum, during her natural life, to be paid to her quarterly in advance by my executor, commencing with her attaining her fifteenth year." That this annuity will never become payable, if Virginia dies before she reaches the age of fourteen years, was not disputed by counsel. It was admitted that there is no precedent for an allowance of interest, by way of maintenance or otherwise, where the legacy was given by way of an annuity. In such a case, there is no possibility of presuming, that the testator meant that interest should be paid; there is no sum named or fund indicated, which can produce interest. It was urged, that the executor must necessarily set apart a fund, the interest of which will be relied on to pay the annuity, when it commences, and that a very short step beyond the adjudged cases, will enable the court to make the allowance desired, without departing from established principles. But it does not appear from what source the income necessary to pay the annuity will be derived; and if it should, in fact, require a part of the income arising from personal property to produce it, to require this income to be paid in advance of the time prescribed by the testator, would be equivalent to declaring by an arbitrary decree, that the annuity shall commence immediately, in the face of the explicit direction that it shall not commence until a subsequent period. A short step in this direction, would be a step too far; it being far safer to stop with the adjudged cases, than to carry principles, originally of somewhat doubtful propriety, farther than has been heretofore done.

The next question to be answered, and perhaps, as this estate is situated, the most important one, is what interest has the widow in the estate called Bellegrove, and the furniture, household goods, silver, books, paintings, statuary, and other works in the fine arts, there or elsewhere, given to her by the codicil during her natural life and widowhood. That a devise of a right to occupy and possess an estate, is in effect

a devise of the land itself, is fully established by the authorities; and that a devise to the wife of goods, plate, jewels, &c., for life or widowhood, entitles her to use them in her own or other person's house, or to let them out to hire, was established by the case of *Marshall* v. *Blew*, 2 *Atk.* 217. But the agreement most relied upon for the appellant was, that this will and codicil taken all together, show an intention on the part of the testator, that she should only occupy and possess the property by actually residing at Bellegrove and using it there, or by a surrender to the son, John Watts, as an equivalent for the annuity she is to receive in that event.

If this intention could be fairly deduced from the language of the will and codicil, read together, and aided by the situation of the property, there would be no difficulty in holding that the widow's estate for life or widowhood, is subject to be defeated by her failing to reside at Bellegrove. But no such intention appears, and none such ought to be implied, without clear and unequivocal language, rendering it free from reasonable doubt.

It is very certain that the testator contemplated the probability that his widow might prefer to reside elsewhere; for the legacy to her of an annuity of one thousand dollars, added by the codicil to the annuity bequeathed in the original will, is expressed to be, to enable her to comply with his wish that she should reside at Bellegrove, where their cherished son Archibald had died; yet he adds, that whether she reside there or not, his intention was, that she should receive the additional yearly sum of one thousand dollars. Some of the articles bequeathed to her were not at Bellegrove when the codicil was made, and he expressly leaves them to her, whether there or elsewhere, without any direction to place them there. It does not distinctly appear by the bill or answers, precisely what the "estate called Bellegrove" includes; and if there be any doubt on this subject, that must be left for further investigation; nor is it necessary to determine a doubt expressed by counsel, as to what it is that must be surrendered to the son, John Watts, to entitle her

to receive for her life, the sum of five hundred dollars yearly, as an equivalent. As the case is now presented, I think it is clear that the widow takes an unrestricted estate for life, subject to be defeated by her ceasing to be a widow, in the estate called Bellegrove, whatever may be meant by that description, and in the personal property described in the first clause of the codicil, and that the Chancellor's decree respecting them is correct.

As tenant for life, she will of course be accountable for waste, but will be required to make no other repairs than such as are necessary to prevent waste. If an insurance is considered desirable, the tenant for life and remainder-man must insure their respective interests, as may be deemed most advisable. It follows also, that the widow can rent the property, real and personal, and can remove the furniture and personal chattles, as other tenants for life are entitled to use similar property.

No appeal has been taken from that part of the decree in regard to certain annuities the testator had been accustomed to pay. But the widow appeals on the ground that the decree does not order and direct the taxes upon the real and personal property given to her for life, to be paid by the executor out of the estate. The bill asks for no direction in this matter. It does not appear to whom the taxes are in fact assessed, nor can we to know to whom they will hereafter be assessed. The questions as to the incidence of the taxes, can be best decided, by a direct appeal to the courts, if either party shall think they have been wrongly assessed.

In my opinion, the decree of the Chancellor should be in all things affirmed. The costs of the appeal to be paid by the executor, out of the estate of the testator, including one hundred and fifty dollars to each of the counsel who have appeared and argued the case in this court.

VAN DYKE, J., was of opinion that the decree respecting interest on the legacy to Susan, and also in allowing the widow to remove the personal property at her own pleasure,

even out of the country, was erroneous, and ought in those particulars to be corrected, and that in other respects it should be affirmed.

The decree of the Chancellor was affirmed by the following vote:

*For affirmance*—BEASLEY, C. J., CLEMENT, CORNELISON, ELMER, FORT, HAINES, KENNEDY, OGDEN, VREDENBURGH, WALES.    10.

*For reversal*—VAN DYKE, in the respects above named.